**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kenneth C. FITZGIBBON, a/k/a Michael
Coe, Defendant-Appellant.**

**No. 77–1520.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted April 21, 1978.

Decided May 9, 1978.

Rehearing Denied June 9, 1978.

Richard S. Henderson, San Diego, Cal., for defendant-appellant.

Rod W. Snow, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., with him on the brief), for plaintiff-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Kenneth C. Fitzgibbon appeals his conviction by a jury of knowingly and willfully making a false statement in violation of 18 U.S.C. § 1001, in connection with bringing foreign currency through U. S. Customs.

On appeal the appellant makes a number of claims: the indictment was defective; he was charged under the wrong statute; the evidence was insufficient to support the verdict; he was the victim of an illegal search; the jury was improperly instructed; and the Act involved here is unconstitutional.

Defendant-appellant Fitzgibbon entered the United States at Denver on a flight from Calgary, Canada. Upon arrival at U. S. Customs Fitzgibbon tendered to the official on duty, Joseph Lockhart, the "Customs Declaration" Form 6059–B, which is given during flight to all passengers coming into the United States from abroad. A question on the form asks "Are you or anyone in your party carrying over $5,000.00 in coin, currency, or monetary instruments?" Fitzgibbon had checked a "no" answer to that question. The official asked Fitzgibbon that question again orally during his inspection, as is apparently done routinely. Fitzgibbon's answer again was "no."

Fitzgibbon had come under suspicion on a tip, the investigation of which showed he had purchased a ticket from Denver to Calgary, Canada, and a return on the same flight forty minutes later. He had in fact returned the following morning. Lockhart testified that he did not recognize Fitzgibbon's name or appearance as one for whom he was to watch, but noticed Fitzgibbon was hesitant in answering "no" to the question about money. He stated that he then asked Fitzgibbon if he acquired anything in Canada and again the answer was "no." As Lockhart examined Fitzgibbon's baggage, his testimony was that the defendant appeared nervous. Lockhart then motioned to a supervisor for a secondary examination. Fitzgibbon was taken to a search room and, in the presence of another Customs official, Lockhart "padded down" Fitzgibbon as a safety precaution and requested that the defendant empty his pockets. In Fitzgibbon's wallet was a relatively small amount of Canadian and Mexican money. Lockhart asked Fitzgibbon if this was the only currency the defendant had on his person and Fitzgibbon answered "yes." Defendant was then asked to remove his boots. In doing so he mumbled something about "investment," and as he removed each boot he reached into it and pulled out a bundle of Canadian currency, amounting in total to approximately $9,800.00 Canadian (worth slightly more than that total in U. S. dollars).

Fitzgibbon was then read his *Miranda* rights and taken to another room where he volunteered to Customs Agent H. R. King that he had acquired the money in Canada and wanted to avoid a hassle with the United States Internal Revenue Service because part of the money was not his; he was to send $5,410.72 of the money to an attorney in New Jersey. The remainder he said he

earned in doing some construction work on a home in Washington state belonging to a Canadian resident. Fitzgibbon produced a slip of Canadian hotel notepaper from an envelope with the figure 5410.72 written on it.

In questioning Fitzgibbon, Customs Agent King took down information contained on a Wisconsin driver's license produced by Fitzgibbon. At trial the Director of Driver Control for Wisconsin testified that the number on the license was fictitious. Another agent testified that he checked the address given on the license and was unable to find any such location.

The indictment in this case reads as follows:

On or about March 31, 1977, at Denver, in the State and District of Colorado, KENNETH C. FITZGIBBON, also known as Michael Coe, did knowingly and willfully make a false statement and representation and make use of a document, to-wit: a Customs Declaration Form 6059–B, which contained a false statement and entry, to the effect that KENNETH C. FITZGIBBON, aka Michael Coe, did not possess more than $5,000.00 in currency when in fact KENNETH C. FITZGIBBON, aka Michael Coe, did possess approximately $10,000.00 in Canadian currency, such declaration or report being required by Title 31, United States Code, Section 1101, under the auspices of the United States Customs Service of the United States Department of Treasury, all in violation of Title 18, United States Code, Section 1001.

The statutory provision underlying the charge, 31 U.S.C. § 1101, states:

.  .  .  whoever, whether as principal, agent, or bailee, or by an agent or bailee, knowingly—

(1) transports or causes to be transported monetary instruments—

.  .  .  .  .  .

(B) to any place within the United States from or through any place outside the United States,  .  .  .

in an amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subsection (b) of this section.

31 U.S.C. § 1052(*l*) defines monetary instruments as:

coin and currency of the United States, and in addition, such foreign coin and currencies,  .  .  .  as the Secretary may by regulation specify for the purposes of the provision of this chapter to which the regulation relates.

These provisions are implemented by regulations found in 31 C.F.R. § 103.23(a),[1] and C.F.R. § 103.11 defines the meaning of the term "currency" to include "[t]he coin and currency of the United States or of any other country, which circulate in and are customarily used and accepted as money in the country in which issued.  .  .  ."

We will consider appellant's contentions on appeal in the order in which they are presented in his brief.

1. Fitzgibbon claims the indictment is defective because it is not specific enough. The argument is somewhat difficult to follow but he seems to contend it should have used the term "monetary instruments" instead of "currency," should have stated specifically that the report requirement encompasses Canadian currency, and should have cited specifically the regulation defining monetary instruments to include Canadian currency. Also he alleges the Customs form referred to is a "baggage declaration" and that is not a proper form.

■■■ We find no merit in these arguments. Fed.R.Crim.P. 7(c)(1) requires only a "plain, concise and definite written statement of the essential facts constituting the offense charged." The test of the sufficiency of the indictment has been stated many times in the cases, and is whether the in-

1. 31 C.F.R. § 103.23(a) as applicable reads: "Each person who physically transports .  . currency or other monetary instruments in an aggregate amount exceeding $5,000 on any one occasion  .  .  .  into the United States from any place outside the United States shall make a report thereof  .  .  .."

dictment contains the elements of the offense charged and apprises the accused of the nature of the offense. A guilty verdict will not be set aside for mere technical defects unless it is apparent the defendant is prejudiced. *United States v. Mason,* 440 F.2d 1293, 1296 (10th Cir. 1971), *cert. denied,* 404 U.S. 883, 92 S.Ct. 219, 30 L.Ed.2d 165 (1971). The indictment here sufficiently apprises the defendant as to the nature of the offense. He is charged with knowingly and willfully making a false statement on a specific Form 6059–B, in violation of a specific statute. The statute creating the reporting duty is also cited. The date of the act constituting the violation is set forth, and the currency which was being carried is recited. The precise regulation need not be mentioned expressly. It was incumbent upon the government to prove beyond a reasonable doubt that defendant knowingly made the false statement, hence that he knew Canadian currency was within the intent of the reporting requirement. But it is not essential that the indictment do more than state that his carrying in of Canadian currency was a violation, in order to advise him of the charge.

■ As to the complaint that Customs Form 4790 is the proper form instead of the one recited in the indictment, we note that Form 6059–B was in normal use given to incoming passengers to ascertain whether a report on Form 4790 was required, and the defendant's only answer was on Form 6059–B, as charged.

■ 2. We see no merit in appellant's argument that he should have been charged under 31 U.S.C. §§ 1058–59 and 31 C.F.R. 103.49 rather than under 18 U.S.C. § 1001. We recently dealt with a similar contention in *United States v. Ready,* 574 F.2d 1009 (10th Cir. 1978) and held that which of two applicable statutes will be made the basis of an indictment is the decision of the government prosecutors.

■ Appellant contends, however, that in enacting §§ 1058–59 Congress intended to preempt prosecution under 18 U.S.C. § 1001. We are cited nothing to support the argument that Congress intended §§ 1058–59 to be the exclusive provisions available to prosecute Title 31 violators; in fact, 31 U.S.C. § 1052(k) suggests Congress contemplated prosecution under 18 U.S.C. § 1001 by reciting:

> For the purposes of § 1001 Title 18 the contents of reports required under any provision of this chapter are statements and representations in matters within the jurisdiction of an agency of the United States.

3. Did the evidence support a finding that defendant reasonably knew that Canadian currency was meant to be included in the reporting requirement? Here reliance is placed mostly upon the fact that the large posters in the passenger approaches to the terminal contain a picture of the American flag plus "$5,000," advising passengers to report negotiable instruments and currency over the amount of $5,000.

Certainly it is relevant whether defendant reasonably knew he should report Canadian money. The form did not expressly refer to Canadian or foreign currency. It did not, however, expressly refer to U. S. currency either, unless that is the required inference from use of the sign "$" before the figure "5,000.00." And if the Canadian currency is considered merely a commodity there is a further statement on the form as follows:

> In addition, the laws of the United States require that you declare ALL articles acquired abroad (*whether worn or used, whether dutiable or not, and whether obtained by purchase, as a gift, or otherwise*) which are in your or your family's possession at the time of arrival. Furthermore, Repairs made abroad must also be declared.
>
> Nonresidents may make an oral declaration. Returning Residents may make an oral declaration if the total price of articles declared (*price actually paid or, if not purchased, fair retail price in country where obtained*) is not more than the sum of $100 per person. Otherwise You Must List In Writing On The Reverse Of This Form All Articles And Repairs Ac-

quired Abroad Which You Are Now Bringing Through Customs. (See additional instructions on reverse.)

All your baggage (including handbags and hand-carried parcels) may be examined. False Statements Made To A Customs Officer Are Punishable By Law. Consult "U. S. Customs Hints" and your inspector for full information.

■ We cannot read appellant's mind, so we have to infer his knowledge of reporting requirements from his behavior and all of the facts in evidence. In this connection we do not have to rely upon the posters or even Form 6059–B which he signed. He made a statement from which it could reasonably be inferred he knew of the requirement when he said he wanted to avoid a hassle with the United States Internal Revenue Service. Further, the fact he carried the money in his boots rather than in his wallet or in his pockets supports the inference he was attempting to hide it. His possession of a false driver's license, and his "no" answers to repeated questions about whether he acquired anything in Canada and whether he had money would support the conclusion he knew of the reporting requirement.

■ As to the contention that he might have reasonably supposed his agency relationship as to part of the money would excuse the reporting, we need only read the precise wording of the question he answered "no."

It stated, "Are you or anyone in your party carrying over $5,000 in coin, currency or monetary instruments?" That clearly requires an agent or one acting partly as agent, carrying such amounts as involved here, to give an affirmative reply.

[11] 4. It is asserted that the money was obtained in violation of defendant's Fourth Amendment rights against unreasonable searches. Obviously U. S. Customs inspectors make searches of the person and baggage of people entering the United States, as a part of their routine duties. It has been held that to conduct a strip search involving a serious invasion of a person's privacy the Customs official must have a "real suspicion" based upon "objective, articulable facts." *United States v. Guadalupe-Garza,* 421 F.2d 876 (9th Cir. 1970). The Circuit which formulated that standard has ruled against appellant's contention in a "boot" case. In *United States v. Chase,* 503 F.2d 571, 574 (9th Cir.), *cert. denied,* 420 U.S. 948, 95 S.Ct. 1332, 43 L.Ed.2d 427 (1975), it was stated:

Real suspicion should, therefore, limit searches only when there is a similar danger of embarrassment: where, in short, the suspect is forced to disrobe to a state which would be offensive to the average person. Judged by this standard, the removal of a boot is surely not a "strip." Rather, it is like one removing an overcoat or a suit jacket—relatively innocuous. . . .

The case before us is an easy one compared to *Chase.* There the party was required to remove other articles of clothing also, and yet the search was considered lawful. Here defendant was taken to an area where strip searches were made, but was asked only to remove his boots. While one inspector testified that he would not say whether the search might have gone farther, there is no question but that it did stop with the boot removal. We hold that the search was lawful.

■ 5. While we believe a cautionary instruction to the jury would have been warranted here as to the driver's license, none was requested. No complaint was made at the time about the jury instructions given by the judge, and defendant presented no additional suggestions that were rejected by the Court. We have reviewed the instructions given and believe they are not prejudicial and state the issues to be decided clearly enough. We find no "manifest injustice" which requires reversal. *United States v. Hagen,* 470 F.2d 110 (10th Cir. 1972), *cert. denied,* 412 U.S. 905, 93 S.Ct. 2291, 36 L.Ed.2d 970 (1973); *McMurray v. United States,* 298 F.2d 619 (10th Cir. 1961), *cert. denied,* 369 U.S. 860, 82 S.Ct. 950, 8 L.Ed.2d 18 (1962).

6. Appellant contends that the portions of the Bank Secrecy Act, 84 Stat. 1114, involved here (31 U.S.C. §§ 1101–1105) violate his First, Fourth and Fifth Amendment rights and should be declared unconstitutional.

■ The contentions regarding the First and Fourth Amendments have been rejected by the U. S. Supreme Court in *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974) and *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).

■ Fitzgibbon's Fifth Amendment objection is directed to the power of the government to compel persons crossing our national borders to file reports of information which might later be used as incriminating evidence in a criminal prosecution. The constitutional issues raised by appellant here have been considered and resolved against appellant's position in *United States v. San Juan,* 405 F.Supp. 686 (D.Vt.1975), *rev'd on other grounds,* (without discussion of these constitutional issues) 545 F.2d 314 (2d Cir. 1976). We do not here decide the constitutional questions raised because they are not properly before us. Fitzgibbon was convicted of filing a false statement, under 18 U.S.C. § 1001. The Supreme Court has held in several cases "that one who furnishes false information to the Government in feigned compliance with a statutory requirement cannot defend against prosecution for his fraud by challenging the validity of the requirement itself." *United States v. Knox,* 396 U.S. 77, 79, 90 S.Ct. 363, 365, 24 L.Ed.2d 275 (1969).

*Bryson v. United States,* 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969) stated the principle as follows:

> Notwithstanding the fact that the Government has proved the elements necessary for a conviction under § 1001, the petitioner would have us say that the invalidity of § 9(h) would provide a defense to his conviction. But after *Dennis* [*Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973] it cannot be thought that as a general principle of our law a citizen has a privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood. (Footnote omitted.)

*See also Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *Leary v. United States,* 544 F.2d 1266 (5th Cir. 1977) (false statement to U. S. Customs officials).

■ 7. Finally, it is argued the trial was unfair, citing principally the fact that information about defendant's use of a false Wisconsin driver's license was allowed to be admitted. That evidence was proper for the purpose for which it was used. We have examined the entire record and find no merit in appellant's contention concerning an unfair trial.

AFFIRMED.