**UNITED STATES of America, Plaintiff,**

v.

**Rolando ANDEREZ, Defendant.**

**No. 80–69–CR–EBD.**

United States District Court,
S. D. Florida.

Aug. 11, 1980.

William A. Clay, Miami, for defendant.

Sonio Escobio, Asst. U. S. Atty., Miami, for plaintiff.

## ORDER

EDWARD B. DAVIS, District Judge.

The Defendant was tried under a two count indictment charging him with the misdemeanor violation of the Currency and Foreign Transactions Reporting Act, 31 U.S.C. § 1058, 1101 (1977)[1] and the felony violation of the false statements statute, 18 U.S.C. § 1001 (1977).[2]

At trial, it was established that the defendant, Rolando Anderez, went through U.S. Customs at the Miami International Airport on his return from Lima, Peru.

He checked the "No" box on a Customs form[3] which asked if he was bringing more than $5,000 into the United States. Had he checked the "Yes" box on the form, he would have been required to fill out another form and give details on the source and ownership of the money.

Customs inspectors searched the defendant and discovered he was carrying $24,000 in U.S. currency. Anderez was indicted under the false statement statute for check-

1. 31 U.S.C. § 1058. Whoever willfully violates any provision of this chapter or any regulation under this chapter shall be fined not more than $1,000, or imprisoned not more than one year, or both.

   31 U.S.C. § 1101. (a) [W]hoever ... knowingly ... transports or causes to be transported monetary instruments to any place within the United States from or through any place outside the United States ... in an amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subsection (b) of this section.

   (b) Reports required under this section shall be filed at such times and places ... as the Secretary [of the Treasury] may require.

2. 18 U.S.C. § 1001. Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any . trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. Customs Form 6059–B. It is the standard declaration form which all persons arriving in the United States are required to fill out and sign. When the defendant arrived at the Customs inspection station, he had filled out none of the back of the form. That side contained the currency question, as well as questions about agricultural products and visits to farms. When the inspector called attention to the blank spaces, the defendant filled in the boxes with the inspector's pen. Trial Transcript at 152–53, 164–65 (Inspector Nerrin).

ing the "No" box on the first form, and indicted under the Reporting Act for failing to fill out the second form. At trial the defendant testified and maintained that his conduct was nothing more than a honest mistake because he did not think the $5,000 question applied to him. Anderez, an American citizen making his first foreign trip since childhood, testified that he was bringing the money into the United States for a friend who wanted to invest in real estate here.

After a jury trial, Anderez was found guilty on both counts. He then moved for judgments of acquittal on both charges, and in the alternative, for a new trial. This Court denies the Motion for a New Trial, and denies the Motion for a Judgment of Acquittal on the misdemeanor violation, 31 U.S.C. § 1058. The Court, however, finds that it was not Congress' intent to make conduct which is a misdemeanor violation of § 1058 also result in a felony conviction under 18 U.S.C. § 1001, and therefore grants the Motion for a Judgment of Acquittal on the felony count.

### I. THE RECORDING ACT AUTHORIZED THE CUSTOMS CURRENCY QUESTION.

To understand this Court's holding, it is important to realize how liability for incorrectly answering the currency question on the first Customs form is controlled by the Reporting Act. Otherwise, the false statement statute would apply because checking "No" when carrying more than $5,000 is obviously a false statement.

The money question exists only by virtue of the Reporting Act. Congress delegated the power to prescribe regulations to carry out the purposes of the Reporting Act to the Secretary of the Treasury.[4] The Secretary, in turn, delegated responsibility to the Commissioner of Customs.[5] The currency question was thus added to the standard Customs declaration form. Since the criminal penalties of the Act apply to regulations issued under its authority, the defendant

violated the Reporting Act when he incorrectly answered that question. *See* 31 U.S.C. § 1058. There would be additional liability under 18 U.S.C. § 1001 only if Congress intended the false statements statute also to apply. This Court holds that it did not so intend.

### II. THE LEGISLATIVE HISTORY OF REPORTING ACT SHOWS NO INTENT TO ADD FALSE STATEMENT PENALTIES.

There is nothing in the legislative history of the Reporting Act to indicate that Congress intended misdemeanor violations of the Act also to be punishable as felonies under the pre-existing false statements statute. The history shows that Congress intended to adopt a separate schedule of misdemeanor and felony penalties rather than to incorporate the felony penalty of 18 U.S.C. § 1001.

The Reporting Act was passed in 1970, almost sixty years after the first false statement statute. Congress was concerned with the ease with which money flowed secretly across this country's borders to aid the criminal violations of banking, tax, securities and narcotics laws. H.R.Rep. No. 91–975, 91st Cong., 2d Sess., *reprinted in* [1970] U.S. Code Cong. & Ad.News, 4397 [hereafter "H.R.Rep."].

From its earliest versions onward, the bill which became the Reporting Act divided proscribed conduct into misdemeanors and felonies. It was the clear intent of Congress that lesser violations of the Act were to be prosecutable as misdemeanors rather than felonies. *See, e. g.*, H.R.Rep. at 4404; 116 Cong.Rec. 16954 (1970) (remarks of Rep. Patman) ("violation . . . a misdemeanor").

The drafters' intent that violations be prosecuted under the Act itself, rather than under the false statement statute, was indicated in a conversation between the Chairman of the Senate Banking Committee and a former U.S. Attorney who favored passage of the bill:

---

**4.** 31 U.S.C. § 1053 (1977).

**5.** 31 C.F.R. § 103.46(a)(7) (1979).

Senator Proxmire. How would the pending legislation help in controlling these illegal currency shipments?

Mr. Morgenthau. I think Chapter 2 of Title II [now 31 U.S.C. § 1101] requires that these shipments be reported, and if they are not, you can prosecute *for violation of that section.* This would be a tremendous help.

*Hearings on S. 3678 and H.R. 15073 before the Senate Subcommittee on Financial Institutions of the Senate Committee on Banking and Currency,* 91st Cong., 2d Sess. 258 (1970) (emphasis added). Despite exhaustive research, no recorded legislative testimony was found indicating that infractions would also be prosecuted under the false statement statute, 18 U.S.C. § 1001. The Court therefore concludes that there was no intent to include such prosecution.

### III. CONGRESS WOULD HAVE BEEN MORE SPECIFIC IF FALSE STATEMENT PENALTIES WERE CONTEMPLATED.

When Congress does want to make the penalties of the false statement statute apply to a new law, it has been its consistent custom to say so clearly and specifically. Such legislative expression is missing from the Reporting Act.

The false statement statute has frequently been incorporated into other laws.[6] The wording in almost all of these statutes is very specific; violation is "subject to the penalty proscribed" by 18 U.S.C. § 1001, "subject to prosecution under" § 1001, or similar language. The Reporting Act does make one reference to the false statement

6. These sections in the United States Code make specific reference to 18 U.S.C. § 1001: 2 U.S.C.A. § 437g(a)(1) (West.Supp.1979); 7 U.S.C.A. § 136h(g)(3) (West.Supp.1979); 15 U.S.C.A. § 3413(d)(2) (West.Supp.1979); 20 U.S.C. § 581(f)(3)(1977); 22 U.S.C. § 1623(e)(1977); 35 U.S.C.A. § 25 (West.Supp.1979); 40 U.S.C. § 276c (1977); 42 U.S.C.A. § 1874(d)(1)(B) (1977); 42 U.S.C. § 2000b–3 (1977); *id.,* § 2000c–6(c); *id.,* § 2716, *id.,* § 3792; 42 U.S.C.A. § 3795b (West Supp.1979).

7. 31 U.S.C. § 1052(k) (1977). For the purposes of section 1001 of Title 18, the contents of reports required under any provision of this chapter are statements and representations in

statute[7] but prosecution under § 1001 is not specified and the application of the false statement penalties is not explicitly incorporated.

In the statutes which specifically incorporate § 1001[8] the false statement penalty is invariably the only punishment. This legislative habit indicates that Congress did not intend to add the penalties of the false statement statute to the Reporting Act's own punishment. The indication is strengthened by the sole exception to the pattern of making the § 1001 penalties the exclusive punishment. 22 U.S.C. § 1623(e) contains its own penalties, but specifies that those penalties are "in addition to" the retribution authorized by the false statement statute.[9] The Reporting Act does not say that its penalties are supplemental to § 1001.

Thus, to be consistent with legislative practice, both before and after enactment of the Reporting Act, Congress would have used clear and specific language had it intended to allow prosecution under the false statement statute for a violation of the Reporting Act. Also, Congress would have either made the § 1001 punishment the sole penalty or would have given notice that the false statement penalties were to be added to the Reporting Act punishment.

### IV. IT WOULD BE ILLOGICAL TO APPLY THE FALSE STATEMENT STATUTE TO THE REPORTING ACT.

This Court presumes that Congress would not make certain conduct a misdemeanor

matters within the jurisdiction of any agency of the United States.

8. See statutes cited in note 6, *supra.*

9. *In addition to* the penalties provided in section 1001 of Title 18, any person guilty of any act, as provided therein, with respect to any matter under this subchapter shall forfeit all rights under this subchapter and, if payment shall have been made or granted, the Commission shall take such action as may be necessary to recover the same. 22 U.S.C. § 1623(e)(1977) (emphasis added).

while at the same time inevitably allowing the misdemeanor to be punished as a felony. Section 1058 specifies that violators shall be fined *not more than* $1,000 or imprisoned *not more than* one year, or both.

The language "not more than one year" strongly indicates the limits of retribution intended by the drafters of the Reporting Act.

Another logical inconsistency shows that the heavier penalties of a false statement felony were not contemplated by Congress. The Reporting Act has its own felony penalty, § 1059. It is applicable whenever a violation is "committed in furtherance of the commission of any other violation of Federal law." The false statement statute is a federal law which is broken, in the prosecution's view, whenever the § 1058 misdemeanor is committed. If the false statement statute were to apply, every Reporting Act misdemeanor violation would always be a Reporting Act felony because of the infraction of the false statement law. That clearly was not Congress' plan.

The "other federal violations" provision was not aimed at the false statement statute. The Reporting Act's purpose was to help fight organized crime and white collar criminals. H.R.Rep. at 4397. Congress' goal was to give the government a new tool with which to fight major crime. 116 Cong. Rec. 36569 (1970) (remarks of Rep. Sullivan).

*V.* CONCLUSION.

It is recognized that one circuit has chosen not to accept the argument that Congress intended to preempt prosecution under § 1001 in enacting the Reporting Act. *United States v. Fitzgibbon,* 576 F.2d 279, 283 (10th Cir. 1978). In *Fitzgibbon,* however, nothing was cited to support the preemption proposition, and it was only a secondary argument which the Court covered in a single paragraph. From a careful reading of that decision, it would appear the *Fitzgibbon* Court was neither presented with nor considered the legislative history of the Reporting Act. Also, *Fitzgibbon* is distinguishable because there the Court was considering an intent–to–preempt argument and here the Court holds that it was not Congress' intent to include § 1001 penalties.

The defendant relies strongly on the "exculpatory no" doctrine which has been carved out as an exception to prosecution under § 1001. *See United States v. Schnaiderman,* 568 F.2d 1208 (5th Cir. 1978), *United States v. Granda,* 565 F.2d 922 (5th Cir. 1978). Because this Court has concluded that Congress did not intend § 1001 to apply to the Reporting Act, this argument need not be considered.

Given the tradition of statutory construction that the compass of criminal statutes must be resolved narrowly when a question of coverage arises, *see, e. g., Dunn v. United States,* 442 U.S. 100, 112–13, 99 S.Ct. 2190, 2197, 62 L.Ed.2d 743 (1979), this Court holds that without more, the misdemeanor violation of the Reporting Act does not automatically violate the general false statement statute as well. It is therefore

ORDERED and ADJUDGED that the Defendant's Motion for Judgment of Acquittal on the charge of violating 18 U.S.C. § 1001, is granted.