UNITED STATES of America, Appellee,

v.

David V. COOK, Appellant.

No. 83–2324.

United States Court of Appeals,
Tenth Circuit.

Oct. 9, 1984.

Vicki Mandell-King, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., with her on the brief), for appellant.

Catharine Goodwin, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with her on the brief), for appellee.

Before BARRETT and DOYLE, Circuit Judges, and BOHANON, District Court Judge.[*]

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a criminal prosecution. The indictment charges that the defendant willfully made false representations in the preparation of a Currency Transaction Report, in violation of 31 U.S.C. §§ 5313, 5322 and its implementing regulations, 31 C.F.R. 103.22(a), 103.49 and on one count of giving a false name and

social security number with intent to deceive, in violation of 42 U.S.C. § 408(g)(2). Cook was found guilty by a jury in the United States District Court for the District of Colorado and was sentenced to five years on each count, to run consecutively. In addition, he was fined $10,000 on Count I and $5,000 on Count II.

After his conviction by a jury on Counts I and II, Cook waived his right to a jury trial and was tried before the court without a jury on Count III. Count III charged Cook with making false declarations before the grand jury investigating his activities charged in Counts I and II, in violation of 18 U.S.C. § 1623. There was a two day trial which ended in a judgment of acquittal in Count III.

Cook here appeals his convictions on Counts I and II. He also appeals his felony sentence under Count I. It is conceded by the government that the felony pronouncement of sentence under Count I was improper. Therefore this matter has to be remanded with directions to so treat the first Count.

I.

The facts are somewhat intricate in that they show the carrying out of a scheme to conceal from the Internal Revenue Service (IRS) ownership of approximately $90,000. The government maintains that a possible motive behind such a scheme was to avoid payment of taxes on appreciation of that money.

In November 1982, Cook withdrew $85,140.55 from a savings account which he held jointly with three other persons at the Otero Savings Bank in Pueblo, Colorado. He held the account as trustee and was allegedly concerned about the high rate of income taxes he was paying on it. Before withdrawing the money, Cook learned that all banks are required by the IRS to complete and file a form called a Currency Transaction Report (CTR) whenever a transaction, whether it is a withdrawal or a

[*] Honorable Luther L. Bohanon, Senior United States District Judge for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

deposit, involves more than $10,000. If the transaction involved $10,000 or less no CTR is prepared or filed. Therefore, Cook requested a cash withdrawal from Otero Savings Bank in the amount of $9,990. No CTR was prepared for this particular transaction. He then requested a bank check for the remaining $85,140.55 and a CTR for that amount was completed and filed with IRS.

Evidently, Cook's plan was to withdraw the money from the savings account in Otero Savings Bank and redeposit the money in another bank using a false identity. This was to conceal his ownership of the funds. To accomplish this, he had to first break his chain of ownership of the funds by depositing the funds from Otero Savings Bank in his existing account at Colorado National Bank and then withdrawing the money in increments not greater than $10,000 to avoid reporting to the IRS. By December 3, 1982, Cook successfully withdrew $90,000 from his account in increments of $9,900 or $9,999 without filing any CTR with the IRS. He then attempted to redeposit the funds in the South Continental Industrial Bank of Englewood, (presently the Manufacturers Hanover Industrial Bank) under a false identity.

On December 3, 1982, in late afternoon, Cook arrived at South Continental Industrial Bank (hereinafter Industrial Bank) with $90,000 in cash. There he identified himself as David Miller (not David Cook) and attempted to deposit the funds in an account. The lateness of the day and the large size of the cash deposit caused Industrial Bank to refuse to process the cash deposit and to send Cook to the larger and federally insured First Continental Bank (now First Interstate Bank) to deposit the cash and return with a cashier's check for deposit at Industrial Bank.

At First Continental Bank, Cook identified himself again as David Miller. He deposited the $90,000, and obtained in return a cashier's check in that amount made out to David Miller. The transaction involved more than $10,000, so the bank prepared a CTR for filing with the IRS. The name of David Miller was given together with a fictitious address. In addition, when asked his social security number he said he could not remember it and further stated that he had lost his social security card.

Cook then returned to Industrial Bank, identified himself again as David Miller, produced a social security card bearing the name of David Miller and showing the social security number 148–33–1718. Industrial Bank refused to accept the cashier's check and open an account in the name of David Miller, for the reason that Cook could not produce a driver's license as a second form of identification. He represented that his license had been suspended in New York.

Following refusal of Industrial Bank to open an account in the name of David Miller, Cook returned to First Continental Bank and reclaimed his $90,000 in cash in exchange for the cashier's check. Englewood police observed Cook leave the bank with the large amount of cash and stopped him in the parking lot outside the bank. They requested identification, and he identified himself as David Miller and showed the police officer the social security card bearing that name but could not produce a driver's license. He was told, therefore, not to drive his car since he lacked a license.

Subsequently, plain clothes detectives again observed Cook in the parking lot acting suspiciously, as if he were attempting to evade being seen. He was then stopped as he drove his car out of the parking lot. He again identified himself as David Miller, but then relented and correctly identified himself as David Cook. This was after the officer determined from a computer check that no such David Miller was ever issued a license nor was the automobile registered under such a name.

The officer prepared a report on the incident but did not charge Cook with any violations. Cook repeatedly asked what government agencies would be notified of his attempt to falsely identify himself. Three days later Cook deposited the $90,-000 in Columbia Savings Bank and used his

correct name, social security number, and address. Subsequently he was indicted by the United States on the three counts identified above.

Cook raises three issues on appeal:

1. He seeks reversal maintaining that the statute charged in Count I does not reach his conduct or is unconstitutionally vague; 2. he maintains that the court erred by amending Count I in the indictment; 3. he maintains that the district court committed reversible error by admitting into evidence police testimony of Cook's conduct after commission of the offenses charged in the indictment.

## II.

 We hold that Title 31 U.S.C. § 5313, charged as violated in Count I of the indictment, applies to Cook's conduct as an individual and is not unconstitutionally vague or uncertain. Cook's contention is that 31 U.S.C. § 5313 does not impose on an individual person a duty to file an accurate CTR.

Cook offers several arguments in support of his contention that his conviction under Count I of the indictment ought to be reversed. He was charged in that Count with a violation of 31 U.S.C. § 5313(a) and its implementing regulation, 31 C.F.R. § 103.22(a). The statutory provision requires a financial institution to file a report with the IRS for any monetary transaction involving the transfer of funds in an amount to be established by the Secretary of the Treasury. The implementing regulations promulgated by the Secretary specify the filing of such a report for all transactions involving more than $10,000 and establish the requirements of a CTR as the report.[1]

Cook contends that the statute and its regulations reach only the conduct of financial institutions and do not reach his conduct as an individual. Therefore, he contends, the statute and its regulations cannot be used in order to charge him with a crime. He asserts that the existence of another statute that could reach his conduct but that was not charged in the indictment, 18 U.S.C. § 1001, demonstrates that the statute and regulations charged were not intended by Congress to apply to him as an individual.

Cook also argues that if the statute charged in Count I, 31 U.S.C. § 5313, is found applicable to his conduct, it is unconstitutional as void for vagueness as applied to him. Thus, he asserts it doesn't pass the test of whether a person of ordinary intelligence receives fair notice by the challenged statute. If not, the contemplated conduct is forbidden. Subject to that standard, he asserts, he was not given such fair notice because the statute refers only to financial institutions and not to individuals.

After reviewing Cook's contentions it is clear that they are without merit in light of the applicable law. He initially attacks the indictment on the ground that as an individual he was under no duty to accurately file a CTR pursuant to 31 U.S.C. § 5313. As a consequence, he argues, his misrepresentation of his true identity on the CTR filed by First Continental Bank could not constitute a violation of § 5313. This, however, is not in accord with the developing case law on

---

1. Title 31 U.S.C. § 5313(a) states:

 (a) When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.

 Its implementary regulation, 31 C.F.R. § 103.22(a) states:

 Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through or to such financial institution, which involves a transaction in currency of more than $10,000. Such reports shall be made on forms prescribed by the Secretary and all information called for in the forms shall be furnished.

this issue and therefore Cook's contention must fail. The indictment did not allege his failure to file a C.T.R.; he was charged in essence with causing the Bank to mis-state the C.T.R.

There are a great number of cases which are contrary to his contention. See that of the Eleventh Circuit in *United States v. Puerto, et al*, 730 F.2d 627, 632–33 (11th Cir.1984). The applicability of § 5313 to Cook's conduct is supported by decisions in other circuits. *E.g., United States v. Thompson*, 603 F.2d 1200 (5th Cir.1979). There the defendant was an agent of the financial institution and, thus, it is not too helpful on its facts. Nevertheless it does support the conclusion. *See also United States v. Tobon-Builes*, 706 F.2d 1092, 1098–99 (11th Cir.1983) *reh. denied*, 716 F.2d 914 (11th Cir.1983). In this latter case it was held that *Thompson* represented a "sensible, substance-over-form approach in dealing with schemes to circumvent financial institution reporting requirements." *Id.* at 1098. *See United States v. Konefal*, 566 F.Supp. 698, 701 (N.D.N.Y.1983) There the court held that an individual may be convicted pursuant to 31 U.S.C. § 5313(a) for causing a financial institution to fail to file a CTR.

Therefore, under the applicable case law, an individual may be found guilty of violating 31 U.S.C. § 5313(a) and its implementing regulation, 31 C.F.R. 103.22(a), where proof exists that the individual knowingly and willfully caused a financial institution to fail to file an accurate CTR. This holding is further supported by 18 U.S.C. § 2(b) which provides:

> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

██ It should be noted that aiding and abetting is not an independent crime under 18 U.S.C. § 2; the statute provides no pen-

alty, but merely abolishes the common-law distinction between principal and accessory. *United States v. Kegler*, 724 F.2d 190, 200–201 (D.C.Cir.1983). Thus, an individual may be indicted as a principal for commission of a substantive crime and he/she may be convicted by proof showing him/her to be an aider and abettor. *Id.* at 201. Moreover, it is well established that an individual is criminally culpable for causing an intermediary, such as the bank here, to commit a criminal act or to fail to perform a legally imposed duty, even though the intermediary has no criminal intent and itself is innocent of the substantive crime. *Tobon-Builes, supra*, at 1099; *United States v. Ruffin*, 613 F.2d 408, 412 (2d Cir.1979). Such bending of the law violates the statute. Courts have also held that an individual (such as Cook here), who is incapable of committing the substantive criminal offense if he/she acted alone (since only financial institutions are under a duty to file a CTR) may nevertheless be criminally liable as a principal where he/she willfully causes the prohibited conduct (here filing a deceptive CTR) to be committed by an intermediary (here a financial institution such as First Continental) which has the capacity to commit the substantive criminal offense but which lacks the criminal intent to be held guilty. *E.g., Tobon-Builes, supra*, at 1100; *Ruffin, supra*, at 412. In summary, it has long been held in this circuit and others that even though an individual is indicted solely for the substantive offense, he/she may be convicted as an aider and abettor even if not charged as such in the indictment. *E.g., United States v. Morris*, 612 F.2d 483, 495 n. 20 (10th Cir.1979); *United States v. McCambridge*, 551 F.2d 865, 871 (1st Cir.1977) (citing numerous decisions).

Accordingly, the holding that 31 U.S.C. § 5313 reaches the conduct of Cook is amply supported by both the case law and the rationale behind aider and abettor culpability.[2] In addition, the reasonableness and

---

2. Cook's contention that the applicability of 18 U.S.C. § 1001 to his conduct evidences the Congressional intent not to make his conduct culpable under 31 U.S.C. § 5313 must also be reject-

ed. There is no merit to the contention that the existence of another statute proscribing his conduct in any way demonstrates the inapplicability of § 5313. Conduct may be made criminal and

foreseeability of this holding demonstrates that a person of ordinary intelligence would surely be on notice that Cook's conduct was prohibited by the statute. Consequently, because the judicially recognized test for determining whether a statute is unconstitutionally vague or uncertain is whether a person of ordinary intelligence is given fair notice that contemplated conduct is proscribed, 31 U.S.C. § 5313 is not unconstitutionally vague or uncertain as applied to Cook. *See United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954); *United States v. Bishop*, 555 F.2d 771, 777 (10th Cir.1977). In our judgment Cook was properly indicted for violating 31 U.S.C. § 5313(a) and 31 C.F.R. § 103.22(a).

### III.

Cook next contends that the district court materially amended Count I of the indictment issued by the Grand Jury before submission of the case to the trial jury. At the close of the evidence at trial, the district court deleted a phrase in Count I that stated that customers of a bank were required to complete a CTR when transactions exceeded $10,000. Cook asserts that the trial court may not amend an indictment except as to matters of form. *Citing United States v. Whitman*, 665 F.2d 313 (10th Cir.1981). The district court's amendment in this case, Cook asserts, prejudiced his case and constitutes reversible error. We now address the question of whether the amendment by the district court of the indictment was prejudicial to Cook.

■ Cook relies on the line of decisions derived from *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887); these held that whenever an indictment requires an amendment of substance it must be sent back to the Grand Jury. However, it is also established that when the substance of the charge in the indictment is left totally unaffected by the amendment, the preroga-

tive of the Grand Jury is not usurped. *E.g., United States v. Kegler*, 724 F.2d 190, 194 (D.C.Cir.1983); *United States v. Bush*, 659 F.2d 163 (D.C.Cir.1981). This circuit has expressed this in the rule that the district court may not amend an indictment except as to matters of form, such that the revised indictment states an offense and gives the defendant notice of the charges he must be prepared to meet. *Whitman, supra*, at 316. The question then is whether the amendment here was one of substance or merely of form.

■ Courts have delineated in various ways this distinction. An amendment of form and not of substance occurs when the defendant is not misled in any sense, is not subjected to any added burdens, and is not otherwise prejudiced. *Williams v. United States*, 179 F.2d 656, 659 (5th Cir.1950), *aff'd.*, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951). The substance of the charge is "every fact which must be proved to make the act complained of a crime ... and ... all else ... is formal." *United States v. Denny*, 165 F.2d 668, 669 (7th Cir.1947), *cert. denied*, 333 U.S. 844, 68 S.Ct. 662, 92 L.Ed. 1127 (1948). As a consequence, the court may amend an indictment in any way that does not strike any portion of the charging paragraph and thus does not change the charged offense. *Kegler, supra*, at 194. As further protection for the defendant, the amendment must be sufficiently definite and certain; it is not to take the defendant by surprise; and any evidence the defendant had before the amendment should be equally available after the amendment. *Id.* at 195. Prejudice to the defendant must be found before an amendment will be held impermissible. *Id.; United States v. Burnett*, 582 F.2d 436, 438 (8th Cir.1976).

■ Applying these standards to the amendment of the indictment in the instant

---

by more that one statute. The choice of which of two applicable statutes will be made the basis of an indictment is the sole decision of the government prosecution. *United States v. Fitzgibbon*, 576 F.2d 279, 283 (10th Cir.1978) (where

this court held it was the prosecution's decision on whether to indict defendant for violations of 31 U.S.C. §§ 1058–59 or 18 U.S.C. § 1001). *See also, United States v. Ready*, 574 F.2d 1009 (10th Cir.1978).

case, it is clear that the amendment was of form only and did not prejudice Cook in any way. The deletion effected only the introductory paragraph of Count I; it did not alter the language of the charging paragraph nor did it change the charged offense. While the indictment before the amendment could arguably have confused the jury if repeated during the charge to the jury, it was not technically a misstatement of the law. Therefore, the district court's deletion of the challenged language while removing that potential confusion did not materially alter the charged offense. The government's theory of the case was in no way altered, Cook was not taken by surprise, and all the evidence he presented prior to the amendment was available for consideration after the amendment. Therefore, the amendment did not prejudice Cook and the amendment was not impermissible.

## IV.

■ Concerning the third issue on appeal, Cook's position is that the testimony was improperly admitted because it was not evidence of similar acts and it was overwhelmingly prejudicial. The district court admitted testimony of police officers concerning Cook's conduct immediately after he had allegedly committed the offenses charged. As stated previously, such conduct included Cook's repeated false identification of himself as David Miller to police officers and his attempts to evade correct identification.

Cook contends this testimony was not admissible "res gestae," as it was not similar enough to that alleged in the indictment. Further, the assertion is that the testimony's prejudicial impact far outweighed its probative value, if any.

The government contends that the testimony was properly admitted under Federal Rule of Evidence 404(b), as the testimony of Cook's subsequent acts tended to show

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In applying this rule, this court has stated that evidence of the defendant's other crimes, wrongs, or acts, including uncharged illegal acts, is generally admissible unless the only purpose for admission is to prove the criminal disposition of the defendant. *United States v. Nolan,* 551 F.2d 266, 271 (10th Cir.), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977); *United States v. Biswell,* 700 F.2d 1310, 1317 (10th Cir.1983). Our conclusion is that the testimony was properly admitted under Federal Rule of Evidence 404(b). The testimony of Cook's subsequent acts tend to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[3] However, the court has stated that the government must carry its burden of showing how the proffered evidence of other crimes or acts is relevant to one or more issues in the case; specifically, (1) the government must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence, and (2) there must be a clear and logical connection between the alleged other acts and the case being tried. *Biswell, supra,* at 1317–18. Other courts have articulated the accepted bases for admissibility of evidence of other acts: when such evidence provides part of the "context" of the crime charged or is necessary to fully present the case; when the evidence is so much a part of the "environment" of the case that it is necessary to "complete the story of the crime"; and when the evidence of other acts is so linked together in "point of time and circumstances" with the crime charged that it is part of the "res gestae" of the crime charged. *See United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980) (listing the various judicial standards).

**3.** Rule 404(b) states:
(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

If we apply these standards to the instant case, it is apparent that the district court did not err in admitting the testimony of the police officers concerning Cook's acts of misidentification subsequent to his conduct charged in the indictment. Such evidence, especially Cook's ultimate acknowledgement of his true identity when confronted with the police computer check that revealed the absence of any license or vehicle registration in the name of David Miller, tended to show his intent, plan, or absence of mistake or accident. In addition, because the questioning police officer initially told Cook that he had observed him in the bank withdrawing the large sum of money, Cook's repeated misidentification of himself was essentially a continuing part of his plan to give a false identity to the bank, the very offense charged in the indictment.

Where the evidence of other acts does tend to prove intent, plan, etc., the district court must weigh its probative value against the prejudice. *Nolan, supra,* at 271. Such a determination is properly within the district court's discretion. *Id.* Obviously, this relevant evidence is inherently prejudicial to defendant; but it is only unfair prejudice substantially outweighing probative value which may be excluded. Fed.R.Evid. 403; *United States v. Naranjo,* 710 F.2d 1465, 1469 (10th Cir.1983). Accordingly, in view of the testimony's high probative value the district court did not abuse its discretion in admitting the testimony.

 \* \* \*

We affirm the sentence on Count II, but remand for resentencing on Count I in accord with government's concession.

The government concedes that Cook was improperly sentenced to a felony penalty pursuant to regulation 31 C.F.R. 103.49(c), while the statutory basis for the regulation, 31 U.S.C. § 5322(a), permits only a misdemeanor penalty. The government agrees that Cook should be resentenced under 31 U.S.C. § 5322(c) and the case is remanded to the district court for such resentencing.