**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 22 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

PETER ALLEN SARRACINO,

      Defendant-Appellant.

No. 96-2144

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-95-210-3-JC)**

---

Mary Catherine McCulloch, Assistant United States Attorney, Albuquerque, New Mexico (John J. Kelly, United States Attorney for the District of New Mexico, with her on the briefs), for Plaintiff-Appellee.

Adam G. Kurtz, Albuquerque, New Mexico, for Defendant-Appellant.

---

Before **BALDOCK, LOGAN** and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

     Peter Sarracino appeals his convictions for the kidnapping and second degree murder of Julius Brown. He argues that there is insufficient evidence to support the convictions; that the district court erred in admitting evidence that he

attacked a couple babysitting his children while he was evading arrest for the kidnapping and murder; and that his conviction of and punishment for both kidnapping and second degree murder violates the Double Jeopardy Clause. We affirm.

## BACKGROUND

In the early hours of February 4, 1995, a fight broke out at a party on the Laguna Pueblo Reservation in New Mexico. On one side were defendant-appellant Peter Sarracino and several of his friends, and on the other were Jeremy Nelson and Julius Brown. Sarracino and his friends -- Andy Luarkie, Jason Aragon, Nolen Suina, and Randy Kose -- took Brown and the badly beaten Nelson in two cars from the party to Water Canyon, where they beat and stabbed Nelson to death and hid his body. Brown was also beaten and stabbed and his shoes taken, but while the group was busy extricating Nelson's car from the mud and snow Brown wandered away. When the group left, Brown was abandoned at Water Canyon.

Although Nelson's car was ultimately freed, Luarkie's car became stuck in the mud, so Sarracino, Aragon, and Luarkie took Suina and Kose back to the party house and then went to seek help getting Luarkie's car out of Water Canyon. Gerald Ray and Ravin Garcia agreed to help. The group returned to Water Canyon in Ray's truck and Nelson's car. Ray's truck promptly became mired, and

while Ray worked on extricating his truck and Luarkie's car he heard Brown call for help. Ray found Brown, who was bloody, cold, and barefoot, and Ray and Garcia escorted Brown back to the vehicles. Ray decided to take Brown to the hospital, and so he took Nelson's car and drove out of Water Canyon with Brown, Sarracino, Aragon, Luarkie, and Garcia. When Garcia asked Brown what had happened to him, Sarracino told Garcia and Ray not to ask questions. Sarracino then told Ray that he, Aragon, and Luarkie would take Brown to the hospital and they dropped Ray and Garcia off.

Instead of taking Brown to the hospital, however, Sarracino, Aragon, and Luarkie -- with Sarracino giving directions and driving at least part of the way -- took Brown to a remote three-tiered cliff near Stove Pipe Peak and ordered him out of the car. Brown said that he would not say anything, but Sarracino hit Brown on the head with a rock and Sarracino, Aragon, and Luarkie beat Brown. Sarracino ordered Brown to jump off the cliff, but Brown refused and was again beaten by Aragon and Luarkie until he could not stand. Aragon and Luarkie then pushed Brown off the cliff. However, Brown fell only to the first tier, so Aragon and Luarkie threw rocks at him. Aragon and Luarkie then climbed down to the first tier and from there threw Brown to the bottom of the cliff. All three threw more rocks at Brown.

As Brown lay at the bottom of the cliff, Luarkie and Aragon climbed down and piled rocks, some quite large, on top of him. Luarkie cut Brown's throat with a scalpel blade. When Aragon and Luarkie left Brown apparently he was still alive, as Aragon heard him moaning. Brown's body was discovered on February 10. The cause of death was diagnosed as the sum total of his injuries.

Sarracino was charged with committing crimes on an Indian reservation in violation of 18 U.S.C. § 1153 (1994), specifically the murder of Julius Brown, 18 U.S.C. § 1111 (1994), the kidnapping of Julius Brown, 18 U.S.C. § 1201 (1994), and aiding and abetting these crimes in violation of 18 U.S.C. § 2 (1994). He was tried before a jury. Aragon, who had accepted a plea agreement providing for a twenty-year sentence in exchange for his testimony, was the government's main witness.

While Sarracino was a fugitive from the charges stemming from Brown's death, he visited his wife's house, where Michelle Corpuz and Dwayne Trujillo were babysitting Sarracino's children. When Corpuz and Trujillo were unable to tell him his wife's whereabouts, Sarracino became enraged. Corpuz managed to call 911 before Sarracino tied her and Trujillo and then hit them with the rifle and the butt of the knife he carried. He told them he was going to kill them, and made a statement to the effect that he had killed before, so what were two more victims. Corpuz and Trujillo were rescued when a member of the police department

arrived to investigate Corpuz's 911 call. Over Sarracino's objections under Federal Rules of Evidence 401, 402, 403, and 404(b), the district court allowed Corpuz and Trujillo to testify about Sarracino's statement as an admission against interest. The court also allowed Corpuz and Trujillo to testify about being assaulted and tied up by Sarracino as an explanation of the circumstances surrounding his admission. After Corpuz's testimony, Sarracino moved for a mistrial on the grounds that the testimony did not show that he made any admission regarding the crimes on trial. Rather, he pointed out, he had a prior manslaughter conviction to which the comment might relate. He further argued that the inclusion of the details of the attack violated Federal Rule of Evidence 404(b). The court denied the motion.

Sarracino testified on his own behalf. The jury acquitted him of first degree murder but convicted him of the second degree murder and the kidnapping of Julius Brown. He was sentenced to concurrent terms of life imprisonment on each offense.

Sarracino now appeals, contending that there is insufficient evidence to support his convictions; that the district court erred in admitting the prejudicial testimony of Corpuz and Trujillo; that, because the kidnapping merges into the murder, the Double Jeopardy Clause prohibits convicting him of both murder and kidnapping; and that he was also subjected to double jeopardy when he was

sentenced under the first degree murder guideline for his kidnapping offense, although he had been acquitted of first degree murder.

## DISCUSSION

**A.     Sufficiency of the Evidence**

We review de novo the sufficiency of the evidence, and we ask "whether, taking the evidence -- both direct and circumstantial, together with the reasonable inferences to be drawn therefrom -- in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Floyd, 81 F.3d 1517, 1525 (10th Cir.) (citations and quotation marks omitted), cert. denied, 117 S. Ct. 144 (1996).

Sarracino was charged with both the principal offenses and aiding and abetting.  To show a defendant aided and abetted the commission of a crime, the government must prove:

> (1) that the defendant associated [himself] with a criminal venture;
> (2) that the defendant participated in the venture as something [he]
> wished to bring about;  (3) that [he] sought by [his] actions to make
> it succeed;  and, lastly, (4) that the proof establishes the commission
> of the offense by someone and the aiding and abetting by the
> defendant so charged.

United States v. Lee, 54 F.3d 1534, 1540 (10th Cir.), cert. denied, 116 S. Ct. 247 (1995) (citation omitted).  If a defendant is convicted of aiding and abetting an offense, he is subject to the same punishment as the principal.  See 18 U.S.C. § 2(a).

## 1. Second Degree Murder

Under the federal murder statute:

> Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnaping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
>
> Any other murder is murder in the second degree.

18 U.S.C. § 1111(a) (1994).

Viewed in the light most favorable to the government, the evidence shows that Sarracino aided and abetted the murder of Julius Brown. Sarracino participated in the events at Water Canyon, ordering Brown to remove his shoes and participating in Brown's beating, and he joined in the group action of abandoning Brown in the cold. When Ray and Garcia rescued Brown, Sarracino threatened them and regained control of Brown by promising to take him to the hospital. Rather than fulfilling that promise, however, he drove to Stove Pipe Peak, where he hit Brown in the head with a rock and again participated in the group's beating of Brown and throwing rocks at him. He stood by while Luarkie and Aragon climbed down to the bottom of the cliff to continue piling rocks on Brown and cut his throat, and then he drove them back and counseled them on

how to avoid getting caught.  We believe there is sufficient evidence to support Sarracino's conviction for second degree murder.

**2.  Kidnapping**

The kidnapping statute requires that the kidnapping be done "for ransom or reward or otherwise."  18 U.S.C. § 1201(a) (1994).  Sarracino contends that the evidence is insufficient to convict him of kidnapping because the government presented no evidence that Brown was abducted for "ransom or reward or otherwise"; rather, he argues, the transportation of Brown was incidental to Aragon and Luarkie's subsequent murder of Brown.

In De Herrera v. United States, 339 F.2d 587, 588 (10th Cir. 1964), this court held that "[t]he use in the statute of the words 'or otherwise' shows an intent of Congress to include within the offense any holding of a kidnapped person for a purpose desired by the captor and negatives the need for a ransom or reward."  Moving a victim to continue a beating in a more secluded location and to prevent detection satisfies the statute.  See United States v. Stands, 105 F.3d 1565, 1576 (8th Cir.), cert. denied, 118 S. Ct. 120 (1997); United States v. Bordeaux, 84 F.3d 1544, 1548 (8th Cir. 1996); see also United States v. Walker, 524 F.2d 1125, 1127 (10th Cir. 1975) (holding hostage to aid escape satisfies benefit element of kidnapping statute).

Viewing the evidence in the light most favorable to the government, it is apparent that Sarracino, Aragon, and Luarkie benefited, in terms of seclusion and a higher chance of secrecy, by moving Brown to the lonely mountain where they continued to beat him and then left him to die. Sarracino contends that the beating and murder was purposeless and unplanned, and thus that there is no motive relevant to determining a benefit from the kidnap. It is only necessary, however, that the kidnappers had some reason for the kidnapping which, to them, would be of some benefit. See United States v. Healy, 376 U.S. 75, 81-82 (1964); Gooch v. United States, 297 U.S. 124, 128 (1936); United States v. Childress, 26 F.3d 498, 503 (4th Cir. 1994). Here, the jury could infer that the defendants' reasons might be merely that they felt like beating Brown, or that they wished to dispose of a witness to Nelson's murder in a location where a body was unlikely to be detected.

Sarracino also argues that there is insufficient evidence that he aided and abetted Brown's kidnapping because nothing shows that he associated himself with the detention of Brown to procure a benefit. The testimony at trial, however, if believed, indicated that Sarracino, after promising to take Brown to the hospital, drove Brown to Stove Pipe Peak, where he hit Brown on the head with a rock and participated in the beating of Brown to such an extent that Brown could not stand. As stated, the jury could infer a benefit to Sarracino. The evidence

indicates that Sarracino willingly associated himself with the venture, participated in it, and helped it to succeed, and is sufficient to support Sarracino's conviction for kidnapping.

**B.    Evidence of Subsequent Attack on the Babysitters**

Sarracino appeals the district court's decision to allow Corpuz and Trujillo to testify to his statement and to the circumstances surrounding his admission.  He also appeals the court's denial of his motion for a mistrial.  We review both the district court's decision to admit evidence and its denial of a motion for mistrial for abuse of discretion.  See United States v. Segien, 114 F.3d 1014, 1022 (10th Cir. 1997) (admission of evidence), petition for cert. filed (U.S. Aug. 26, 1997) (No. 97-6568); United States v. Linn, 31 F.3d 987, 993 (10th Cir. 1994) (mistrial).

The government's notice of intent to introduce Corpuz and Trujillo's testimony indicated that Sarracino stated, "I'm down for two, what's two more," while he was a fugitive facing charges on the murders of Nelson and Brown and while he was assaulting and threatening to kill Corpuz and Trujillo.  Sarracino did not object to the admission of his statements as hearsay although he did make objections under Rules 401, 402, and 403.  Sarracino's main objection, however, was a Rule 404(b) objection to the admission of the circumstances surrounding the statement which revealed a violent assault on the two babysitters.  The trial

court overruled Sarracino's objections and admitted the testimony as an admission against interest and an explanation of the circumstances surrounding the admission. The trial court explicitly stated that it was not admitting the evidence under Rule 404(b).

At trial, Corpuz testified that Sarracino stated "he had already killed before and it wouldn't matter if he killed us because he was like a ghost and they wouldn't know where to call or where to look." Trujillo testified that Sarracino told Corpuz that "it wouldn't matter what he did . . . everybody was looking for him . . . he was a dead man already, so what difference would two more make." The defense contended that Sarracino had a prior manslaughter conviction to which the statement about having killed before could refer and that as a result the testimony did not constitute an admission relevant to the case on trial. Consequently, the defense moved for a mistrial due to Rule 404(b) violations after Corpuz's testimony on direct examination. The motion was denied.

On appeal, Sarracino argues that the evidence was not admissible because the substance of the witnesses' testimony did not establish that Sarracino's statement related to the case on trial, as distinguished from other conduct. He also argues that the testimony about the details of the attack was inadmissible under Rule 404(b).

The district court did not abuse its discretion in refusing to strike Corpuz's testimony and in refusing to grant Sarracino's motion for a mistrial. The jury could reasonably infer Sarracino's statements were made in connection with the events at issue in the trial, especially because the remarks tend to indicate that he was on the run from some sort of killing. In addition, when Sarracino testified on his own behalf he admitted making remarks about "I'm down for two, what's two more," a statement even more specific than Corpuz and Trujillo's testimony, although he tried to dismiss that remark as "drunk talk."

Because the evidence of the attack was clearly evidence of "other crimes, wrongs, or acts," however, the district court erred in not analyzing the evidence under Federal Rule of Evidence 404(b). Under Rule 404(b), we examine whether:

> (1) the prosecution offered the evidence for a proper purpose under Rule 404(b); (2) the evidence is relevant under Fed. R. Evid. 401; (3) the evidence's probative value is not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (4) the district court, upon request, gave a proper instruction limiting the jury's consideration of the evidence to the purpose for which it was admitted.

Segien, 114 F.3d at 1022-23. Although the district court did not undertake a formal Rule 404(b) analysis, we may review the omission for harmless error. United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995).

Rule 404(b) identifies several proper purposes for admitting evidence of "other crimes, wrongs, or acts," including "proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Further, we have recognized that Rule 404(b)'s listing is not exclusive: "the rule is one of inclusion, rather than exclusion, unless the evidence is introduced for the impermissible purpose or is unduly prejudicial." Segien, 114 F.3d at 1022; see also United States v. Lara, 956 F.2d 994, 997 (10th Cir. 1992) (admitting evidence of separate indictment to impeach defendant's direct testimony that he had not been prosecuted for anything); Jack B. Weinstein & Margaret A. Berger, 2 Weinstein's Federal Evidence § 404.22[6][a] (2d ed. 1997) (collecting cases).

One proper purpose for admitting Rule 404(b) evidence is to show the context of a charged crime. See United States v. Brewer, 1 F.3d 1430, 1436 (4th Cir. 1993); United States v. Lehder-Rivas, 955 F.2d 1510, 1516 (11th Cir. 1992); United States v. Moore, 735 F.2d 289, 292 (8th Cir. 1984) (per curiam); United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980); United States v. Wright, 606 F.2d 939, 939 (10th Cir. 1979) (per curiam). We recognize that the context evidence at issue here relates to the admission rather than directly to the charged crime. Although we have been unable to find any cases applying the context principle to a once-removed situation like the one before us, we believe the reasons for admitting context evidence apply equally in this situation. A jury "cannot be expected to make its decision in a void." Masters, 622 F.2d at 86.

The members of the jury had to determine what weight to give to Sarracino's admission, and to do so they had to know the circumstances under which the admission was made. Consequently, because the evidence was offered to show context and not merely to show Sarracino had a tendency toward violence, the first part of the Rule 404(b) test was satisfied.

Two other parts of the Rule 404(b) test are also satisfied. As discussed above, the testimony about the attack was relevant to evaluating the admission and therefore relevant to whether Sarracino committed the crimes for which he was indicted. Further, Sarracino does not argue, and the record does not indicate, that he was refused a jury instruction regarding the limited uses of the evidence.

The remaining part of the Rule 404(b) test-- whether the prejudicial impact of the evidence outweighs its probative value -- is only partially satisfied. The majority of the evidence was more probative than prejudicial in establishing context for the admission, and thus the district court did not abuse its discretion in admitting it. However, the testimony about the details of the attack may have been carried too far. Corpuz's testimony about Sarracino putting the rifle into her mouth and the recurring headaches she suffers as a result of the beating, for example, was not necessary to explain the context of Sarracino's admission, and it was more prejudicial than probative because those details tended merely to highlight Sarracino's violent nature. However, to the extent that the admission of

such testimony was error, it was harmless given Sarracino's own testimony about the attack on the babysitters essentially confirming those details, as well as the overwhelming evidence about the horrific nature of the crimes for which Sarracino was tried.

## C. Double Jeopardy

Sarracino challenges both his convictions and his sentence on double jeopardy grounds. We review legal conclusions regarding double jeopardy de novo. See United States v. Hawley, 93 F.3d 682, 687 (10th Cir. 1996).

First, Sarracino argues that the kidnapping and the murder were a unitary crime, and thus he cannot be convicted for both under the Double Jeopardy Clause. The Supreme Court has held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932); see also Dixon v. United States, 509 U.S. 688 (1993) (requiring use of Blockburger test).

Here, the murder statute alone requires proof of a killing, 18 U.S.C. § 1111(a) (1994), while the kidnapping statute alone requires proof of a seizure, confinement, abduction, or carrying away, 18 U.S.C. § 1201(a) (1994). Consequently, Sarracino's actions constituted two crimes and his convictions do

not offend the Double Jeopardy Clause.  Cf. Diggs v. Owens, 833 F.2d 439, 445 (3d Cir. 1987) (noting that first degree murder and kidnapping are discrete offenses for sentencing purposes).

Sarracino next argues that he was sentenced in violation of the Double Jeopardy Clause.  His offense level was set at level 43, the first degree murder offense level, as directed by the kidnapping guideline section in a situation where the kidnapping victim is killed under circumstances that would constitute murder. See U.S.S.G. § 2A4.1(c)(1) (1994).  Sarracino contends that his acquittal of first degree murder should preclude the use of the first degree murder offense level and that he should be sentenced using the second degree murder base offense level of 33 or the kidnapping base offense level of 24.

We find no merit in this argument.  Sarracino was sentenced for the crimes he committed according to the appropriate Guideline provisions.  Further, we note that in any event Sarracino could not receive less than a life sentence, because the kidnapping statute provides that where the "death of any person results" from the kidnap, the punishment is life imprisonment or death.  18 U.S.C. § 1201(a) (1994).

## CONCLUSION

For the reasons stated, Sarracino's convictions for second degree murder and kidnapping and his sentence of life imprisonment are AFFIRMED.

- 16 -