**F I L E D**

**UNITED STATES COURT OF APPEALS**

**February 21, 2007**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SHAUN MICHAEL JAMES, also
known as Shawn M. James,

Defendant-Appellant.

No. 06-7072
(E.D. Okla.)
(D.Ct. No. CR-05-58-01-W)

_____

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, and **BARRETT** and **BRORBY**, Senior
Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is

therefore ordered submitted without oral argument.

A jury convicted Appellant Shaun Michael James of one count of

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, _res judicata_ and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

possession of a firearm after a former conviction of a felony in violation of 18 U.S.C. § 922(g)(1). He appeals his conviction on grounds the district court improperly admitted evidence the firearm in question was stolen. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Mr. James's conviction.

## I. Factual and Procedural Background

Authorities with the Tahlequah, Oklahoma, Police Department routinely compare the serial numbers of firearms pawned in the city with a computerized database, maintained by the Federal Bureau of Investigation (FBI) at the National Crime Information Center (NCIC), to determine if the firearms are stolen. On March 9, 2005, officers discovered that a Winchester Model 37A twenty-gauge shotgun, pawned the day before at the BS & G Pawn Shop in Tahlequah, had been stolen on November 22, 2004. The pawn ticket showed "Shaun James" pawned the shotgun and signed the ticket.

The pawn shop owner, Tony Boyle, did not remember Mr. James and could not identify him as the person who pawned the shotgun, but explained he filled out the pawn ticket in question by transferring information from the driver's license of the person pawning the item. In this case, the information from the driver's license transferred onto the pawn ticket identified the person as "Shaun James," with a birth date of April 26, 1979, and an address of 26399 South Indian

Road, Parkhill, Oklahoma; and described him as an Indian male, twenty-five years old, five feet seven inches in height, weighing 113 pounds, with black hair and black eyes. Mr. Boyle further testified the pawn ticket contained the signature of "Shaun James" and was signed in Mr. Boyle's presence by the person pawning the shotgun. Finally, Mr. Boyle explained individuals pawning an item must present a government-issued photo identification and that he looks at the photo on the identification, presumably to compare it with the person physically pawning the item; in this instance, he explained, the person pawning the shotgun presented an Oklahoma driver's license with a photo.

In early April 2005, and again in late April 2005, someone identifying himself as "Shaun James" telephoned Jason Chennault, the Chief Investigator for the Cherokee County Sheriff's Office. Both times the caller asked if he could get his shotgun back, and each time Investigator Chennault explained he could not because it was stolen.

On May 4, 2005, Mr. James met with a corrections officer, Ryan Tiger; when Mr. Tiger asked Mr. James if he had any contact with law enforcement, he answered "yes," explaining he contacted Investigator Chennault because he was trying to get his shotgun out of the pawn shop but could not because it was stolen and a "hold" had been placed on it. Mr. James also told Mr. Tiger he bought the

shotgun from a lady who lived near his father, he and another person went to the pawn shop to pawn it, and he was going to hire an attorney to try to get it back.

At trial, evidence was offered through various witnesses establishing the address and birth date on the pawn ticket matched Mr. James's actual address and date of birth. In addition, while none of the witnesses were handwriting experts, they testified the signature of "Shaun James" on the pawn ticket matched his actual signature on various other signed documents admitted into evidence. The defense did not call any witnesses.

Also at trial, Mr. James's counsel made an objection pursuant to Federal Rule of Evidence 404(b) on grounds evidence the shotgun was stolen was irrelevant and the government had failed to notify him of its intent to use "this other crime" evidence. R., Vol. 2 at 15. Mr. James's counsel also objected under Federal Rule of Evidence 403, claiming such evidence was more prejudicial than probative. In response, government counsel explained the fact the firearm was stolen was discussed with Mr. James's counsel and no allegation was being made Mr. James knowingly possessed a stolen firearm, but only that he was a felon in possession of a firearm. Government counsel also explained the purpose in offering evidence the shotgun was stolen was to give the jury background information as to why the witnesses acted as they did.

The district court overruled Mr. James's objection and admitted testimony the shotgun at issue was stolen. Mr. James's counsel did not request a limiting instruction cautioning the jury on the weight given such evidence and the district court did not *sua sponte* provide a limiting instruction. In closing argument, Mr. James's attorney concentrated on the fact no direct evidence implicated Mr. James as no one saw him with the shotgun, positively identified him as either the person who pawned the shotgun or called Inspector Chennault, or offered video, fingerprint or expert handwriting evidence implicating him. In so doing, counsel's closing argument focused on the fact someone else could have used Mr. James's driver's license as a means of identity theft, but he did not suggest the other person allegedly accompanying Mr. James to the pawn shop had possessed or pawned the firearm.

At the conclusion of closing arguments at around 3:00 p.m., the jury adjourned for deliberations. At 5:30 p.m., the jury sent a note to the district court judge asking if Mr. Tiger was a probation officer. With approval of both counsel, the judge returned a note stating, "You have all the evidence that was admitted at trial." R., Vol. 2 at 99-101. Less than thirty minutes later, the foreperson sent a note stating, "We have discussed twice and voted twice. Still split. Where do we go from here? Hard heads on both sides." R., Vol. 2 at 101. When the district court asked counsel how each would like to proceed, counsel for both parties

suggested three hours of deliberation was insufficient and deliberations should continue, causing the judge to send the jury a note stating, "Please continue your deliberations." R., Vol. 2 at 101-03. Approximately one hour and forty minutes later, at 7:44 p.m., the jury returned a unanimous verdict finding Mr. James guilty of being a felon in possession of a firearm.

## II. Discussion

Mr. James's sole issue presented on appeal is "[w]hether the district court erred by allowing evidence at trial indicating that the shotgun allegedly possessed by [him] was stolen." Apt. Br. at 1. In support of his argument, he contends evidence the shotgun was stolen was outside the scope of Federal Rule of Evidence 404(b) because it was not inextricably intertwined with the charged crime or necessary to avoid confusion. Expounding on this contention, Mr. James claims evidence the shotgun was stolen was not "necessary to complete or render less confusing the testimony of a witness" because it did not shed light on the issue presented at trial as to whether he was a felon in possession of a firearm. Apt. Br. at 8. He also suggests such evidence was more prejudicial than relevant "because it enticed the jury to find guilt based on the fact the gun was stolen," as evidenced by the jury's five-hour deliberation and despite "the possibility that a person who accompanied [him] to the pawn shop may have been the actual possessor." Apt. Br. at 5-6, 9-10.

We start our analysis of Mr. James's appeal with our standard of review and the principles applicable to admission of evidence. We review for abuse of discretion the district court's evidentiary rulings made pursuant to Federal Rules of Evidence 403 and 404(b). *See United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006) (discussing Rule 404(b))*, petition for cert. filed* (U.S. Jun. 21, 2006) (No. 05-11764)*; United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997) (discussing Rule 403). Thus, the decision to admit or exclude such evidence lies within the sound discretion of the trial court, *see United States v. Harrison*, 942 F.2d 751, 759 (10th Cir. 1991), and "[w]e will not reverse a district court's ruling if it falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." *Mares*, 441 F.3d at 1156 (quotation marks, citation and alteration omitted). *See also Call*, 129 F.3d at 1405.

Both the Supreme Court, in *Huddleston v. United States*, 485 U.S. 681, 691 (1988), and this circuit, in *United States v. Record*, 873 F.2d 1363, 1374 (10th Cir. 1989), announced four factors to consider in weighing the admissibility of evidence under Rule 404(b), including whether: (1) the evidence is offered for a proper purpose; (2) it is relevant; (3) the probative value of the evidence is substantially outweighed by its prejudicial effect under Rule 403; and (4) a proper limiting instruction was given, if requested by the defendant. *See also Mares*,

441 F.3d at 1156; *United States v. Sarracino*, 131 F.3d 943, 948 (10th Cir. 1997).

With regard to the first factor, "Rule 404(b) identifies several proper purposes for

admitting evidence of 'other crimes, wrongs, or acts,' including 'proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake

or accident.'" *Sarracino*, 131 F.3d at 949 (quoting Fed. R. Evid. 404(b)).

However, we recognize the purposes expressly identified in Rule 404(b) are not

exclusive, and instead, "the rule is one of inclusion, rather than exclusion, unless

the evidence is introduced for impermissible purpose or is unduly prejudicial."

*Id.* (quotation marks and citation omitted).

One proper purpose for admitting "other acts" evidence, not expressly

identified in Rule 404(b), is to show the "context" of a charged crime, as "[a] jury

'cannot be expected to make its decision in a void.'" *Id.* (quoting *United States v.*

*Masters*, 622 F.2d 83, 86 (4th Cir. 1980)). We have also explained:

> Rule 404(b) only applies to evidence of acts extrinsic to the charged
> crime.[1] An uncharged act may not be extrinsic if it was part of the
> scheme for which a defendant is being prosecuted, or if it was
> *inextricably intertwined* with the charged crime *such that a witness'*

---

[1] "Extrinsic" evidence "involves an act wholly apart from and not
intricately related to the asserted claim," *Elliot v. Turner Constr. Co.*, 381 F.3d
995, 1004 (10th Cir. 2004), and is otherwise generally defined as not inherent;
extraneous or external. *See* Webster's II New Riverside Univ. Dictionary, Rev.
Ed., 245 (1996). In contrast, "intrinsic" evidence is evidence directly related to
or the part of the same event, *see Elliot*, 381 F.3d at 1004, and is otherwise
generally defined as of or relating to the fundamental nature of a thing; inherent.
*See* Webster's II at 366.

> *testimony would have been confusing and incomplete without mention of the prior act.*

*Record*, 873 F.2d at 1372 n.5 (quotation marks and citations omitted) (emphasis added). In addition, we have held "[o]ther act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were *necessary preliminaries to the crime charged*." *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993) (quotation marks and citation omitted) (emphasis added). Finally, we have repeatedly relied on the Fourth Circuit's decision in *Masters* for a list of other possible purposes for admitting evidence of other acts under Rule 404(b). *See* 622 F.2d at 86 (providing list of other possible purposes). These include whether the evidence: (1) provides part of the "context" of the crime charged or is necessary for a "full presentation of the case"; (2) is so much a part of the environment of the case that it is necessary to "complete the story of the crime"; or (3) is so linked together in point of time and circumstances with the crime charged it is part of the "res gestae" or, in other words, "part and parcel of the proof of the offense charged." *See generally Elliot*, 381 F.3d at 1004 (relying on *Masters*, 622 F.2d at 86); *Sarracino*, 131 F.3d at 949 (same); *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995) (same); *United States v. Cook*, 745 F.2d 1311, 1317-18 (10th Cir. 1984) (same).

In this case, it is apparent Investigator Chennault's and Mr. Tiger's testimony the shotgun was stolen was a necessary "preliminary" to the crime charged, *see Lambert*, 995 F.2d at 1007, or, in other words, was necessary to provide a full presentation of the case and completion of the story, or was so linked together in point of time and circumstances with the crime charged it was part of the "res gestae." *See generally Elliot*, 381 F.3d at 1004; *Sarracino*, 131 F.3d at 949; *Kimball*, 73 F.3d at 272; *Cook*, 745 F.2d at 1317. This is because the entire scenario under which Mr. James was implicated for being a felon in possession of a firearm began when authorities ran a check on the pawned shotgun to determine whether it was stolen, which then led to its confiscation. Confiscation of the stolen shotgun next led the person identifying himself as "Shaun James" to call Investigator Chennault for the purpose of retrieving the confiscated shotgun. During these calls, that person implicated himself when he asked if he could get his shotgun back. The government then offered Corrections Officer Tiger's testimony that he met with Mr. James, who said he went to the pawn shop to pawn the shotgun and that he contacted Investigator Chennault because he was trying to retrieve the gun from the pawn shop but could not because it was stolen and a hold had been placed on it.

Not only did Mr. Tiger's testimony corroborate Mr. Boyle's testimony a person carrying the photo identity of a Shaun James pawned the shotgun and

-10-

Inspector Chennault's testimony Mr. James called to retrieve it, but Mr. Tiger was the only witness who could positively identify Mr. James as the person making inculpatory statements. Thus, Mr. Tiger's testimony was also offered to show Mr. James, and not some imposter, possessed the pawned shotgun and called Investigator Chennault attempting to retrieve it. Given Mr. James's defense strategy at trial centered on the fact he did not possess or pawn the shotgun, it is evident the testimony of both Investigator Chennault and Mr. Tiger was offered to show Mr. James in fact previously possessed the pawned shotgun. Thus, such evidence was offered to establish the crime charged — i.e., possession of a firearm after a former conviction of a felony — and not that Mr. James stole the shotgun.

For these reasons, evidence the pawned shotgun was stolen was inextricably intertwined with the charged crime for the purpose of its admission. Moreover, without inclusion of the fact the shotgun was stolen, the testimony of both Investigator Chennault and Mr. Tiger may have been confusing and incomplete, as the jury would have been left in a void as to the circumstances leading to confiscation of the shotgun and Mr. James's incriminating statements to both of them. *See Record*, 873 F.2d at 1372 n.5. Thus, we hold a proper purpose existed for admission of evidence the shotgun was stolen.

Having determined such evidence was offered for a proper purpose, we turn to the second factor, regarding its relevancy. *See Mares*, 441 F.3d at 1156. For the same reasons previously discussed, it is clear that evidence the shotgun was stolen was relevant to the crime charged as it explained why Mr. James made incriminating statements about the confiscated shotgun and his attempts to retrieve it.

Next, we address the third Rule 404(b) factor, regarding whether the probative value of the stolen shotgun evidence was substantially outweighed by its prejudicial effect, as contended by Mr. James. As previously noted, he argues such evidence enticed the jury to find him guilty, as shown by its five-hour deliberation and despite the possibility the person accompanying him to the pawn shop may have possessed the shotgun.

We begin addressing Mr. James's contention by pointing out that neither the jury instructions nor the government's arguments at trial suggest Mr. James stole the shotgun. In addition, the only testimony offered at trial on how Mr. James acquired the shotgun did not suggest he stole it, but rather that he stated he purchased it. However, even if the testimony the shotgun was stolen had a prejudicial effect on the jury, it is clear its probative value substantially outweighed its prejudicial effect. This is because the stolen shotgun evidence, as

previously discussed, was necessary in providing the requisite proof Shaun James, and not an imposter, pawned the shotgun and made calls to retrieve it after its confiscation as a stolen weapon.

In addition, while the jury may have deliberated five hours, the length of its deliberation alone does not establish any prejudice in admitting the stolen shotgun evidence substantially outweighed its probative value. Rather, given the overwhelming inculpatory evidence that someone identified as "Shaun James" pawned the shotgun and called Inspector Chennault, it is more likely the jury was deliberating the issue raised by the defense concerning identity theft and its claim no direct evidence showed it was Mr. James, and not an imposter, who pawned the shotgun and made calls to recover it.

We also reject Mr. James's claim the stolen shotgun evidence caused the jury to somehow disregard evidence the other person allegedly accompanying Mr. James could have possessed the shotgun. Only one witness, Mr. Tiger, testified Mr. James told him he was accompanied by another person when he pawned the shotgun. In the course of Mr. Tiger's conversation with Mr. James, it is clear Mr. James was not implicating the other person, and in fact, he told Mr. Tiger he contacted the authorities because he, Mr. James, wanted to get his shotgun back. Based on this testimony and the other overwhelming inculpatory evidence offered

at trial, the fact someone may have accompanied Mr. James to the pawn shop was unlikely to sway the jury to acquit, regardless of whether the district court admitted evidence the shotgun was stolen.

Lastly, we address the fourth and final Rule 404(b) factor on whether a proper limiting instruction was given, if requested by the defendant. *See Mares*, 441 F.3d at 1156. We have long held it is not error for a trial court to fail to give a limiting instruction on Rule 404(b) evidence in the absence of a proper jury instruction request by counsel. *See Record*, 873 F.2d at 1376 (relying on *Huddleston*, 485 U.S. at 691-92). In this case, it is clear a limiting instruction was never requested, and therefore, the district court did not err in failing to provide such an instruction to the jury.

Applying our standard of review and considering the applicable Rule 404(b) factors, we hold the district court did not abuse its discretion in admitting evidence the shotgun pawned by Mr. James had previously been stolen.

III. Conclusion

For these reasons, we **AFFIRM** Mr. James's conviction.


**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge