O’BRIEN, Circuit Judge,
dissenting.
I agree with the majority’s decision affirming Lovern’s convictions. I disagree, however, that no reasonable jury could have found Barron guilty. See United States v. Dowlin, 408 F.3d 647, 657 (10th Cir.2005) (stating our review of the sufficiency of the evidence is “highly deferential as we will not overturn a jury’s verdict unless no reasonable juror could have concluded, on the basis of the evidence presented, that the defendant was guilty of the crime charged”) (quotations omitted).
The majority says the government presented no evidence suggesting Barron possessed the necessary mens rea, specifically, that he knew the prescriptions he helped distribute were outside the usual course of professional practice or without a legitimate medical purpose. For what it is worth, there was no direct evidence of the scope of his knowledge (there seldom is in cases of this nature). But there was evidence from which reasonable and sufficient inferences could be drawn. According to the majority, the evidence showed Barron was a high-school dropout with no experience in the medical or pharmaceutical field who merely served as the pharmacy’s computer technician, suggesting that he was a dumb lackey, intentionally kept out of the loop. That is a fair inference, but not the only one to reasonably be drawn from the facts. And, under our system, the infer *1110 enees that count are those drawn by the jury. We must “accept the jury’s resolution of the evidence as long as it is within the bounds of reason.” United States v. Triana, 477 F.3d 1189, 1195 (10th Cir.), cert. denied, 551 U.S. 1110, 127 S.Ct. 2928, 168 L.Ed.2d 257 (2007). Because it was quite reasonable for the jury to find Barron had the requisite knowledge, I respectfully dissent.
Barron was charged and convicted of three substantive counts of distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1) and aiding and abetting the same, as well as one count of conspiring with named and unnamed coconspirators to commit the substantive offense. The jury was instructed that a “non-pharmacist employee of a pharmacy may assist in filling a prescription for a controlled substance without violating Section 841, unless the employee does so knowing that the prescription was not issued for a legitimate medical purpose or in the usual course of medical practice.” (R. Vol. 1 at 216.) It was told that to be found guilty of distribution of a controlled substance outside the course of professional medical practice or without a legitimate medical purpose, it had to find the government proved the following beyond a reasonable doubt:
[1] the defendant knowingly or intentionally distributed a prescription drug that is a controlled substance ..., [2] the defendant knew it was some type of controlled substance, and [3] the defendant knew he was distributing the substance outside the usual course of professional medical practice or without a legitimate medical purpose.
(Id. at 220.)
The jury was further told that to be found guilty of conspiring to commit the substantive offense, the government must show beyond a reasonable doubt:
[1] two or more persons agreed to distribute controlled substances outside the usual course of professional medical practice or without a legitimate medical purpose ...; [2] the defendant knew the essential objective of the conspiracy; [3] the defendant knowingly and voluntarily joined in the conspiracy; and [4] there was interdependence among the members of the conspiracy....
(Id. at 217.) And the instructions provided guidance on each of these elements. The jury was told Barron may be found guilty of the substantive offense if he aided or abetted its commission:
Th[e] law makes it a crime to intentionally help someone else commit a crime. To find a defendant guilty of [aiding and abetting], you must be convinced that the Government has proved each of the following beyond a reasonable doubt: First, someone else committed the crime charged ...; and
Second, the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means the Government must prove that the defendant consciously shared the other person’s knowledge of the underlying criminal act and intended to help him.
The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.
(Id. at 221.)
Finally, the jury was told that to sustain its burden of proof on the conspiracy and *1111 substantive counts, the government was required to prove beyond a reasonable doubt that Barron acted “other than in good faith for a legitimate medical purpose and in the usual course of professional practice in accordance with a standard of medical practice generally recognized and accepted in the United States.” (Id. at 223-24.) And:
In determining whether or not a defendant acted in good faith in the course of a medical practice, you may consider all of the evidence in the case which relates to that conduct. Among other factors, you should consider any evidence pertaining to the particular position held by the defendant and whether the defendant had any specialized training or knowledge concerning the usual course of medical practice.
(Id. at 224.)
Barron does not challenge the propriety of these jury instructions and they are consistent with our case law and the statutory and regulatory scheme. See 18 U.S.C. § 2, 21 U.S.C. §§ 829, 841(a), 846; 21 C.F.R. § 1306.04(a); see also United States v. Celio, 230 Fed.Appx. 818, 824-26 (10th Cir.) (unpublished) (substantive offense), cert. denied, — U.S. -, 128 S.Ct. 301, 169 L.Ed.2d 214 (2007)[1]; United States v. Isaac-Sigala, 448 F.3d 1206, 1210 (10th Cir.2006) (conspiracy); United States v. Sarracino, 131 F.3d 943, 946 (10th Cir.1997) (aiding and abetting); United States v. Verners, 53 F.3d 291, 295 (10th Cir.1995) (aiding and abetting). Following these instructions, which gave ample opportunity for acquittal, the jury found Barron guilty. And there was sufficient evidence, if reasonable inferences be allowed, to support the jury’s verdict.
Barron worked closely with Hilst and Lovern. He printed the labels for the illegal prescriptions, to be filled by Lovern. He inquired of the Board of Pharmacy as to whether he was required to be registered as a technician to work in the pharmacy. Although the Board answered in the affirmative, Barron never registered. Based on his interview responses to an agent, Barron knew the pharmacy did not communicate with prescribing physicians; no customers came into the pharmacy; the pharmacy did not initially have a pharmacist; when the pharmacy did hire a pharmacist, the pharmacist backed out; Hilst had once attempted to determine whether a prescribing doctor existed; and Barron was told by his wife, who had worked as a surgical technician, that she did not believe the pharmacy’s operations were legit.
Most damaging, however, are the instant messages between Barron and Heredia (who was in Costa Rica). In one message, Barron told Heredia he had a number of drugs that had been sitting at the pharmacy for a long time which he wished to dispose of before their expiration date. He asked Heredia to “hook a brother up on scripts” and said he “need[ed] some fake customers pleaasssssse [sic].” (R. Supp.App. at 64.) In another message Heredia asked Barron if the pharmacy could “fill 500 today?” (Id. at 65.) Barron replied, “nope jerry [Lovern] said” followed by “and I need a centive [sic] to do that.” Barron added, “what he pays me is about 250 orders” and “jerry wants nothing over 300.” (Id.) Other messages between the two indicated Barron was aware of the controlled nature of the drugs being distributed.
A reasonable jury could conclude Barron knew the pharmacy’s drug operations were illegal and more specifically that he knew the distribution of the controlled sub *1112 stances occurred without a legitimate medical purpose. It doesn’t take medical or pharmaceutical experience (or even a high school diploma) to know issuing prescriptions to fake customers is not within the normal course of a doctor’s practice or for a legitimate medical purpose.
Although the majority discounts it as not “eye-popping,” Barron was paid $26,600 for the eight months he worked at the pharmacy. (Majority Op. at 1108.) Assuming he worked 40 hours per week, this amounts to a little more than $20 per hour. A reasonable jury could infer this was an exorbitant amount of money given, as the majority says, Barron is “a high school drop-out with no experience in the medical or pharmaceutical fields” who “performed only menial computer tasks” at the pharmacy and who “did not even pick which particular prescriptions the pharmacy filled — Mr. Hilst sat by him and directed him on which boxes to check.” (Id. at 1098, 1105.) A jury could reasonably infer (as it apparently did) Barron was paid a relatively handsome wage because he knew was participating in illegal activity, a risk worth taking only for additional compensation. The implications of Barron’s earnings are not beyond the ken of a jury, even if there was no positive proof of his historical pay records.
As the district court aptly said: “[T]he court cannot say it is illogical or speculation for a jury to infer the requisite knowledge given [Barron’s] role at the pharmacy, his disregard of Board of Pharmacy requirements, his awareness of the questionable legality of the pharmacy’s operations, his communications back and forth between Hilst, Lovern and Heredia, and his receipt of an unusual amount of money from Hilst. Although a different jury might have drawn different inferences, the jury’s verdict as to Mr. Barron represents a permissible view of the evidence.” (R. Supp.App. at 67 (emphasis added).)

. Unpublished opinions are not binding precedent. 10th Cir. R.App. P. 32.1(A). I mention Celio as I would opinions from another circuit, persuasive because of their reasoned analyses.